UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALI MOHAMED ELATRACHE,

                Petitioner,

v.

ANTHONY STEWART,

                Respondent.

_____/

Case No. 2:17-cv-12488

HONORABLE STEPHEN J. MURPHY, III

## OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION [1] AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner Ali Mohamed Elatrache, a state prisoner, sought a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF 1. Elatrache was convicted of first-degree felony murder, in violation of Mich. Comp. Laws § 750.316(1)(b), and challenged his conviction on grounds that the trial court, the prosecutor, and his trial attorney violated his constitutional rights. *Id.* at 4–6, 9–10. Respondent countered that Elatrache's claims lack merit, were waived, are not cognizable on habeas review, are procedurally defaulted, or were reasonably adjudicated by the Michigan Court of Appeals. ECF 4, PgID 123–24, 146, 159, 171, 184, 192, 205, 215. Based on the following reasons, the Court will deny Elatrache's petition.

## BACKGROUND

Elatrache was charged in Wayne County, Michigan with first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a), first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b), first-degree home invasion, Mich. Comp. Laws § 750.110a(2)(b), and aggravated stalking, Mich. Comp. Laws § 750.411i(2)(c). ECF

1

5-1. Elatrache pleaded guilty to the stalking charge and then was tried before a jury in Wayne County Circuit Court on the remaining charges. *People v. Elatrache*, No. 324918, 2016 WL 1578937, at *1 (Mich. Ct. App. Apr. 19, 2016).

The charges arose from allegations that Elatrache stalked his girlfriend ("S") and later killed her father during a home invasion.[1] In February 2013, Elatrache and S began dating after meeting at her job. *Id.* S testified that within several weeks of dating, Elatrache began acting jealous and erratic and caused issues for her at work. *Id.* Because of these issues, S wanted to break up with Elatrache but ultimately ended up staying with him because she was afraid of him and what he might do to her. *Id.*

At some point during the relationship, Elatrache got a hold of S's apartment keys. *Id.* After this, S noticed a number of events that caused her concern, including that her laptop and phones went missing, her father's laptop went missing, her apartment's door was set on fire, suspicious voices would interrupt her phone calls with Elatrache, her father's car was vandalized, and her bank account was emptied with a missing a debit card. *Id.* at *1–3. Elatrache told S that he believed the events were the result of someone that was after her father. *Id.* at *1–2. S soon became suspicious that Elatrache was involved in the events, and after she confronted him about them, he admitted to everything. *Id.* at *3. Following his admission, Elatrache started stalking S and threatening her and her father. *Id.*

---

[1] The Court will refer to the girlfriend as "S" to be consistent with how the state appellate court referred to her in its dispositive opinion.

During this time, Elatrache was in and out of the country. *Id.* at *1–3. When he returned to the United States in May 2013, S began to receive "creepy," aggressive, and inappropriate texts from an unknown number. *Id.* at *3. Even though she suspected the messages were from Elatrache, she continued to speak with him because she wanted to keep him calm. *Id.* But the messages only got more aggressive and threatening. *Id.* at *4. On July 18, 2013, S returned home from work, found her apartment door open, and found her father dead on the floor of his bedroom. *Id.* After the murder, S looked through her father's personal belongings and discovered that Elatrache was sending threats directly to her father as well. *Id.* Elatrache was arrested in Canada after attempting to call S. *Id.*

On October 17, 2014, the jury found Elatrache guilty of second-degree murder, Mich. Comp. Laws § 750.317, as a lesser offense of premeditated murder, and felony murder, Mich. Comp. Laws § 750.316(1)(b). ECF 5-17, PgID 1622–24. The jury acquitted Elatrache of home invasion. *Id.* at 1623. On November 3, 2014, the trial court sentenced Elatrache to a term of three to five years' imprisonment for his guilty plea for stalking and life imprisonment without the possibility of parole for the felony murder conviction. ECF 5-18, PgID 1644. The trial court also sentenced Elatrache to a term of sixty to ninety years' imprisonment for second-degree murder, but then stated that the second-degree murder conviction and sentence would be vacated for appellate purposes. *Id.* at 1645.

Elatrache, through counsel, appealed his convictions and sentence, and on April 19, 2016, the Michigan Court of Appeals affirmed his convictions and sentence.

3

*See Elatrache*, 2016 WL 1578937 at *1.  Elatrache then filed an application for leave to appeal in the Michigan Supreme Court, which was denied on November 30, 2016. *People v. Elatrache*, 500 Mich. 898 (2016).

On August 1, 2017, Elatrache filed the present habeas corpus petition through counsel. ECF 1. He raised the following six claims:

> 1. He was denied due process of law and a fair trial when the trial judge refused to instruct the jury on the lesser offenses of voluntary and involuntary manslaughter because those necessarily included offenses were supported by a rational view of the evidence.
>
> 2. He was denied his constitutional right to a unanimous jury verdict and therefore a fair trial when the trial judge instructed the jurors that they did not have to be unanimous on alternate theories for the home invasion charge supporting the felony murder conviction.
>
> 3. He was denied his right of confrontation, due process and a fair trial when the trial court refused to compel disclosure of the presentence investigation reports of a critical prosecution witness.
>
> 4. He was denied a fair trial by arguments and evidence which were inflammatory and unfairly prejudicial regarding his relationship with the decedent's daughter and his (Elatrache's) alleged threats to kill the assistant prosecutors and the officer-in-charge.
>
> 5. He was denied a fair trial when the trial court erroneously admitted extensive evidence of other criminal activity attributed to him, including aggravated stalking, several break-ins, thefts, credit card fraud, and arson.
>
> 6. He was denied his right to effective assistance of counsel when his trial attorney failed to object to inadmissible and inflammatory testimony from a jailhouse informant that he (Elatrache) allegedly threatened to kill both prosecutors and the officer in charge, and failed to request an accident instruction.

*Id*. at 4–6, 9–10.

## LEGAL STANDARD

The Court may only grant habeas relief to a state prisoner if his claims were adjudicated on the merits and the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established federal law. 28 U.S.C. § 2254(d)(1). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the] precedent." *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

A state court unreasonably applies Supreme Court precedent only when its application of precedent is "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (internal citations omitted). A merely "incorrect or erroneous" application is insufficient. *Id*. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 654 (2004)). A federal court reviews only whether a state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Greene v. Fisher*, 565 U.S. 34, 38 (2011). A state court need not cite to or be aware of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

Decisions by lower federal courts "may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)).

## DISCUSSION

I.   <u>The Lack of Jury Instructions on Lesser-Included Offenses</u>

Elatrache alleged that he was denied due process and a fair trial when the trial court refused to instruct the jury on the lesser offenses of voluntary and involuntary manslaughter. ECF 1, PgID 36. He contended that both voluntary and involuntary manslaughter were necessarily included offenses of murder and that the evidence supported jury instructions on both offenses. *Id.*

Elatrache argued that an instruction on voluntary manslaughter was warranted because the jurors could have concluded that the victim died of heart failure, triggered or exacerbated by a struggle with Elatrache, and therefore he was guilty only of voluntary manslaughter. *Id.* at 46. And Elatrache asserted that an instruction on involuntary manslaughter was supported by evidence that he approached the victim without a weapon and that the confrontation escalated into the use of non-deadly force with an intent to injure, but no malice. *Id.* at 47. The state trial court determined that there was insufficient evidence to justify jury instructions on manslaughter, and the Michigan Court of Appeals upheld the trial court's decision. *Elatrache*, 2016 WL 1578937, at *6–7.

Elatrache's claim lacks merit because the Supreme Court has not determined whether the failure to give jury instructions on lesser-included offenses in non-capital

cases violates the right to due process. *See Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980) (stating that "[w]e need not and do not decide whether the Due Process Clause would require the giving of such instructions in a noncapital case"). Thus, the "failure to instruct on a lesser included offense in a noncapital case is not 'such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.'" *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002) (quoting *Bagby v. Sowders,* 894 F.2d 792, 797 (6th Cir. 1990) (*en banc*)).

And even if the case were deemed comparable to a capital case,[2] a defendant is entitled to a jury instruction on a recognized defense only if there is sufficient evidence for a reasonable jury to find in his or her favor. *Mathews v. United States*, 485 U.S. 58, 63 (1988). "A lesser-included offense instruction is therefore not required when the evidence does not support it," *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001), and for the following reasons, the evidence did not support a jury instruction on either voluntary or involuntary instruction.

### A. Voluntary Manslaughter

In Michigan, "[m]urder and manslaughter are both homicides and share the element of being intentional killings. However, the element of provocation which characterizes the offense of manslaughter separates it from murder." *People v. Pouncey*, 437 Mich. 382, 388 (1991). Voluntary manslaughter has the following components: "First, the defendant must kill in the heat of passion. Second, the

---

[2] Elatrache was charged with first-degree murder, an offense that carries the State's most severe penalty upon conviction: life imprisonment without the possibility of parole. *See* Mich. Comp. Laws § 750.316(1).

passion must be caused by an adequate provocation. Finally, there cannot be a lapse of time during which a reasonable person could control his passions." *Id*. The provocation is adequate if it would cause a reasonable person to lose control. *Id*. at 389.

At trial, defense counsel supported his request for a jury instruction on voluntary manslaughter by arguing that there were pre-existing ill feelings between Elatrache and the victim and that there was some type of altercation between the two men. ECF 5-14, PgID 1462. Nevertheless, when the trial court asked defense counsel about the basis for the altercation and what could have caused the emotional disturbance to be reasonable, defense counsel stated that he had no further argument on that issue. *Id*. at 1463. The trial court then declined to give a jury instruction on voluntary manslaughter because there was no evidence of any provocation, other than a possible argument. ECF 5-15, PgID 1476–77.

The Michigan Court of Appeals upheld the trial court's decision and concluded that Elatrache "did not kill the victim in the heat of passion after adequate provocation." *Elatrache*, 2016 WL 1578937, at *7. In reaching this conclusion, the Michigan Court of Appeals found that "defense counsel had difficulty mustering up an argument to support giving such an instruction in the trial court buttresses the trial court's decision." *Id*.

The state appellate court's adjudication of Elatrache's claim is supported by the record and is objectively reasonable. Although a witness testified that Elatrache informed him there was an argument that got "out of control," there was no evidence

8

that the victim provoked Elatrache. Elatrache may not have liked the victim, but those claims were not enough to cause a reasonable person to lose control. The lesser-included jury instruction on voluntary manslaughter was therefore not required.

B.    *Involuntary Manslaughter*

Involuntary manslaughter in Michigan "is the unintentional killing of another, without malice, during the commission of an unlawful act not amounting to a felony and not naturally tending to cause great bodily harm; or during the commission of some lawful act, negligently performed; or in the negligent omission to perform a legal duty." *People v. Mendoza*, 468 Mich. 527, 536 (2003). The trial court declined to instruct the jury on involuntary manslaughter because the evidence did not fit the legal requirements for the offense. ECF 5-15, PgID 1477–78. The Michigan Court of Appeals agreed, stating that "[n]o evidence was presented that the death was caused by an unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some lawful act." *Elatrache*, 2016 WL 1578937 at *8. The appellate court found that the evidence showed Elatrache "struck the victim on the head numerous times and strangled him with his hands, . . . [which] clearly showed either an intent to kill or intent to cause great bodily harm, and an involuntary manslaughter instruction was not supported by a rational view of the evidence." *Id.*

This conclusion was objectively reasonable because the severity of the victim's injuries indicated that the assailant acted intentionally and with malice. As such, the evidence did not support a jury instruction on voluntary or involuntary

manslaughter, and the state court's rejection of Elatrache's claim was reasonable. Elatrache therefore has no right to relief on his first claim even if it were cognizable on habeas review.

## II.   The Jury Instructions on a Unanimous Decision

Elatrache next argued that the trial court violated his right to a unanimous jury verdict and a fair trial when the court instructed the jurors that they did not have to reach a unanimous decision on the alternate theories for the home-invasion charge.[3] ECF 1, PgID 51. Although the jury acquitted Elatrache of home-invasion, the home-invasion charge was the predicate felony supporting the felony-murder conviction. Elatrache therefore contended that the jury should not have been instructed on alternate theories because the criminal information (the charging document) did not list alternative theories and that the trial court's jury instruction was not a model of clarity. *Id.* at 51, 55–58.

---

[3]  Michigan's first-degree home invasion statute reads:

> A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:
>> (a) The person is armed with a dangerous weapon.
>> (b) Another person is lawfully present in the dwelling.

Mich. Comp. Laws § 750.110a(2). In Elatrache's case, the alternative theories were that he broke and entered the victim's home or that he entered the home without permission.

The Michigan Court of Appeals concluded that Elatrache waived review of his claim by not objecting to the jury instruction and that, in any event, the claim lacked merit. *Elatrache*, 2016 WL 1578937 at *10.

A.    *Waiver*

A waiver ordinarily is "the intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1983). Waiver extinguishes an error. *See United States v. Olano*, 507 U.S. 725, 733 (1993) (noting that "[m]ere forfeiture, as opposed to waiver, does not extinguish an 'error'"). Therefore, when a defendant knowingly waives an error, his or her challenge is forever foreclosed, and cannot be resurrected on appeal. *United States v. Saucedo*, 226 F.3d 782, 787 (6th Cir. 2000) (citing *Olano*, 507 U.S. at 733). This rule applies on habeas corpus review of a state prisoner's conviction. *See Morgan v. Lafler*, 452 F. App'x 637, 646 n.3 (6th Cir. 2011) (stating that, "[a]lthough the district court found [the petitioner's] jury-instruction claim forfeited by procedural default for failure to object, the district court could just as easily have rejected the claim on the basis of waiver").

While it is true that "'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and . . . 'do not presume acquiescence in the loss of fundamental rights,'" *Johnson*, 304 U.S. at 464 (footnotes omitted), the record supports the state appellate court's conclusion that Elatrache waived review of his claim about the jury instruction on home invasion. The trial court instructed the jury that "there are two different manners in which home invasion in the first

degree can occur and have been alleged by the prosecutor's office," by either entering without permission *or* breaking into the home. ECF 5-16, PgID 1588–91. And the trial court instructed the jury that although they did not need to all agree on which theory the conviction rests on, they did need to agree that the prosecution proved beyond a reasonable doubt that Elatrache did one. *Id.* at 1589–90. Defense counsel did not object. And during closing arguments, defense counsel noted that "felony murder rests on a theory that Ali Elatrache, on July 18th, either broke into that house or that apartment, *or* somehow got in there against the wishes of [the victim]." *Id.* at 1541. Finally, following some deliberations, the jury sent a note to the trial court asking: "while the theories of home invasion can be split, does the overall verdict of home invasion have to be unanimous?" ECF 5-17, PgID 1614. The trial court answered yes. *Id.* at 1614–15. And, again, defense counsel did not object.

Elatrache argued that the state court's decision was erroneous and an unreasonable application of federal law and the facts because the lack of an objection is forfeiture, not a waiver. "[F]orfeiture is the failure to make the timely assertion of a right." *Olano*, 507 U.S. at 733. Defense counsel, however, expressly approved of the jury instructions, as read to the jury, by stating that the instructions were fine, with the exception of the lack of jury instructions on manslaughter. ECF 5-16, PgID 1600. By expressing satisfaction with the jury instructions, Elatrache intentionally relinquished or abandoned a known right to object to the jury instructions, and "waived review of the alleged instructional error." *People v. Head*, 323 Mich. App. 526,

537 (2018) (citing *People v. Kowalski*, 489 Mich. 488, 504 (2011)), *appeal denied,* 503 Mich. 918 (2018).

### B.  Procedural Default

Even if Elatrache did not waive his claim, it is procedurally defaulted. In the habeas context, a procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). The Court "will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012).

Elatrache's claim is deemed procedurally defaulted if each of the following four elements is met: "(1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner has not shown cause and prejudice excusing the default." *Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013) (citing *Jalowiec v. Bradshaw*, 657 F.3d 293, 302 (6th Cir. 2011)). To determine whether a state procedural rule was applied to bar a habeas claim, [courts] look "to the last reasoned state court decision disposing of the claim." *Id.* (citing *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010)).

These factors are easily met here. First, there is a relevant state procedural rule that requires defendants in criminal cases to preserve a claim about a trial court's jury instruction by objecting to the instruction at trial. *Head*, 323 Mich. App.

at 537. Elatrache violated this rule by not objecting at trial to the jury instruction on home invasion.

Second, the Michigan Court of Appeals enforced the rule by stating that, based on the quoted excerpts from trial, Elatrache had waived the issue and that he could not harbor an error at trial and then use the error as an appellate parachute. *Elatrache*, 2016 WL 1578937, at *10 (citing *People v. Szalma*, 487 Mich. 708, 726 (2010)).

Third, the state procedural rule is an adequate and independent basis for foreclosing federal review of a constitutional claim if the rule is firmly established and regularly followed. *Taylor v. McKee*, 649 F.3d 446, 450–51 (6th Cir. 2011). The rule requiring an objection at trial to preserve a claim about a jury instruction was firmly established and regularly followed long before Elatrache's trial in 2014. *See, e.g., People v. Sabin*, 242 Mich. App. 656, 657 (2000) (stating that "[a] party must object or request a given jury instruction to preserve the error for review").

Fourth, although Elatrache argued that his trial attorney was "cause" for his failure to object to the jury instruction in question, ECF 7, PgID 2617, 2619, he did not raise that argument as an independent claim in state court. The doctrine of exhaustion of state remedies "generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986). Elatrache raised a claim about trial counsel on appeal, but he did not argue that counsel was ineffective for failing to object to the jury instruction on the home

14

invasion alternative theories. Therefore, trial counsel cannot be deemed "cause" for Elatrache's procedural default.

In the absence of "cause and prejudice," a habeas petitioner may pursue a procedurally defaulted claim only if he can demonstrate that failure to consider his claim "will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Carrier*, 477 U.S. at 496). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Elatrache has not raised any new evidence of actual innocence, and the evidence against him is overwhelming. A miscarriage of justice will therefore not result if the Court does not address the substantive merits of Elatrache's claim about the jury instruction on home invasion. His second claim is procedurally defaulted and therefore fails.

C.    *The Merits*

Finally, even if the claim was not waived or procedurally defaulted, Elatrache's challenge to the unanimity jury instruction lacks merit because "the Supreme Court [has] held that jurors are not constitutionally required to unanimously agree on

alternative theories of criminal liability." *United States v. Kim*, 196 F.3d 1079, 1083 (9th Cir. 1999) (citing *Schad v. Arizona,* 501 U.S. 624 (1991)).

Similarly, under state law, jury unanimity is not required on alternate theories when, as in Elatrache's case, a statute lists alternative means of committing an offense which by themselves do not constitute separate and distinct offenses. *Elatrache*, 2016 WL 1578937 at *10 (quoting *People v. Johnson,* 187 Mich. App. 621, 629–30 (1991)). Thus, Elatrache "could have been properly convicted of felony murder even if some jurors believed that he broke into the apartment while others believed he simply entered without permission." *Id*. The Court therefore declines to grant relief on Elatrache's claim that he was entitled to a specific unanimity jury instruction on first-degree home invasion.

III.   <u>The Right of Confrontation</u>

Elatrache, in his third claim, argued that the trial judge deprived him of his right of confrontation by refusing to compel disclosure of a critical prosecution witness's pre-sentence investigation reports (PSIR). ECF 1, PgID 60. The witness was Mark Fragel, the inmate who testified that Elatrache made incriminatory admissions to him while the two of them were confined in jail together.

Elatrache alleged that Fragel had an extensive criminal record, but he was unable to impeach Fragel with his criminal record and other specific information about Fragel's background because the trial court prevented him from reviewing Fragel's PSIR. *Id*. at 61. Elatrache asserted that, at a minimum, the trial court should have ordered an *in camera* inspection to determine whether any of the PSIR

contained impeachment evidence. *Id.* He also contended that the prosecution withheld information about Fragel from him, and he maintained that the jurors would have had a significantly different impression of Fragel's credibility if they had been provided with additional information about Fragel. *Id.* at 62–63.

On appeal, the Michigan Court of Appeals held that "there is absolutely no evidence that the prosecutor had any of the alleged documents in his possession" and that Elatrache "failed to indicate how Fragel's PSIR's would contain relevant information to his case." *Elatrache*, 2016 WL 1578937 at *13. As such, his "generalized assertion of a need to attack the credibility of his accuser [does] not establish the threshold showing of a reasonable probability that the records contain information material to his defense sufficient to overcome the various statutory privileges." *Id.* (citing *People v. Stanaway*, 446 Mich. 643, 650 (1994)).

A.   *Clearly Established Federal Law*

The Sixth Amendment to the United States Constitution guarantees a defendant in a criminal prosecution "the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Clause is "applicable to the States through the Fourteenth Amendment," *Idaho v. Wright*, 497 U.S. 805, 813 (1990), and it "includes the right to cross-examine witnesses[.]" *Richardson v. Marsh*, 481 U.S. 200, 206 (1987).

A defendant's right to confront the witnesses against him, however, is not absolute. *United States v. Davis*, 430 F.3d 345, 360 (6th Cir. 2005) (citing *Norris v. Schotten*, 146 F.3d 314, 329 (6th Cir. 1998)). "Generally speaking, the Confrontation

Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original).

When it is merely the *extent* of cross-examination that is limited, a trial court retains considerable discretion to bar exploration of a relevant subject on cross-examination. *Dorsey v. Parke*, 872 F.2d 163, 166–67 (6th Cir. 1989). "Where the trial court limits the extent of cross-examination, the inquiry for the reviewing court is 'whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory.'" *Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir. 2006), *as amended on denial of reh'g and reh'g en banc* (Feb. 15, 2007) (quoting *Dorsey*, 872 F.2d at 167). Moreover, errors under the Confrontation Clause are subject to harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *Vasquez v. Jones*, 496 F.3d 564, 574 (6th Cir. 2007).

Elatrache's related due process claim derives from *Brady v. Maryland*, 373 U.S. 83 (1963), in which the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution[.]" *Id*. at 87. A true *Brady* claim has three components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

To show prejudice, Elatrache must establish that the suppressed evidence is material—that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995). The question is whether "'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Strickler*, 527 U.S. at 290 (quoting *Kyles*, 514 U.S. at 435). Speculation about a different outcome is not enough; "'[t]he likelihood of a different result must be substantial, not just conceivable.'" *LaMar v. Houk*, 798 F.3d 405, 416 (6th Cir. 2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)). That is, the likelihood of a different result must be great enough to undermine confidence in the verdict. *Wearry v. Cain*, 136 S.Ct. 1002, 1006 (2016) (citing *Smith v. Cain*, 565 U.S. 73, 75–76 (2012)).

   B.   *Application*

Elatrache was not prevented from cross-examining Fragel about his criminal background during trial. He claimed instead that he "was unable to obtain specific information regarding Fragel's complete criminal activities, his psychiatric history, his prior cooperation with law enforcement, his history of drug and alcohol abuse and whether he had made false statements in the past to the authorities, all matters that would be disclosed in a [PSIR]." ECF 1, PgID 61. On direct examination by the prosecutor, however, Fragel admitted that he had an extensive criminal background which included property crimes, drug offenses, and some domestic violence; he also admitted that he had a drug addiction at one time. ECF 5-12, PgID 1150–51.

On cross-examination, Fragel admitted that, during a fourteen-year period, he had committed twelve felonies and sixteen misdemeanors. *Id*. at 1216–17. Defense counsel was then permitted to question Fragel in detail about his criminal history in three counties, his current offense, and the favorable deal he received from the prosecution in exchange for his testimony against Elatrache. *Id*. at 1217–25. When defense counsel asked Fragel whether he had committed any felonies in any other counties, Fragel responded, "I think that about sums it up," *id*. at 1223, and when defense counsel asked whether Fragel had used a mental defense in one of his prior cases, Fragel stated that he did not recall, *id*. at 1222.

The jury had enough information, despite the limits placed on the cross-examination of Fragel, to assess the witness's credibility. Further, Elatrache has not shown a reasonable probability that the result of the proceeding would have been different if he had acquired Fragel's PSIR. His right of confrontation was therefore not violated.

Additionally, Elatrache's due process claim likewise lacks merit as he merely speculated that material evidence was suppressed. Furthermore, the alleged constitutional errors were harmless, given the strength of the evidence against Elatrache and the fact that the prosecutor encouraged the jury to ignore Fragel's testimony if they wanted to, because Fragel was only one piece of the puzzle, and the State's case did not rest on Fragel's testimony. ECF 5-16, PgID 1567–68. For all these reasons, the state appellate court's denial of Elatrache's constitutional claim was objectively reasonable. His third claim therefore fails.

IV.   <u>The Prosecutor's Remarks</u>

Elatrache next alleged that the prosecutor deprived him of due process and a fair trial by making an inflammatory opening statement and subsequently relying on evidence about Elatrache's vulgarity, relationship with S, and threats to kill the assistant prosecutor and officer in charge of the case. ECF 1, PgID 67–68, 74. He contended that the prosecutor's remarks and portrayal of him as a horrible and disgusting person hindered the jury's ability to judge the evidence fairly and were intended to prejudice the jury against him. *Id*. at 69–72, 76.

The Michigan Court of Appeals held that Elatrache was not denied a fair trial because "[t]he prosecutor did nothing more than repeat defendant's own words" and "did not make any statements that were not subsequently supported by the evidence presented during trial." *Elatrache*, 2016 WL 1578937, at *14. Because Elatrache's "conduct towards S was highly relevant to the crime and formed the foundation of the case against defendant," the prosecutor did nothing improper. *Id*.

A.   *Clearly Established Federal Law*

"On habeas review, 'the Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015) (quoting *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006)). Consequently, although prosecutors must "refrain from improper methods calculated to produce a wrongful conviction," *Viereck v. United States*, 318 U.S. 236, 248 (1943), prosecutorial-

misconduct claims are reviewed deferentially in a habeas case, *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).

When the issue is the prosecutor's remarks, the "clearly established federal law" is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986). *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (per curiam). In *Darden*, the Supreme Court held that it "is not enough that the prosecutors' remarks were undesirable or even universally condemned." 477 U.S. at 181 (citation omitted). The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).

The initial question under *Darden*, however, "is whether the prosecutor's comments were improper." *Stermer v. Warren*, 959 F.3d 704, 725 (6th Cir. 2020) (citing *Darden*, 477 U.S. at 180). "If a prosecutor's comments were improper, the question becomes whether they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Darden*, 477 U.S. at 180; *Donnelly*, 416 U.S. at 643).

To decide this question, "the remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error. In other words, the Court must consider the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly." *United States v. Young*, 470 U.S. 1, 12 (1985). The Supreme Court has discussed several factors to consider in making this assessment, including the weight of the evidence against the

defendant, the tactical context of the prosecutor's statements, and whether the comments were invited by the defense's own conduct. *Darden*, 477 U.S. at 181–83; *accord Young*, 470 U.S. at 12–13, 19–20. The nature and frequency of the improper remarks can also determine whether the defendant's trial was rendered unfair. *See Berger v. United States*, 295 U.S. 78, 89 (1935) ("[W]e have not here a case where the misconduct of the prosecuting attorney was slight or confined to a single instance, but one where such misconduct was pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential.").

Here, the prosecutor's remarks about Elatrache during opening statements were pronounced and persistent. But the remarks were based on the evidence, as opposed to the prosecutor's personal opinion or some misstatement of the facts. And the remarks were quotes from Elatrache's own text messages or recorded phone calls to S. As such, the remarks were not improper.

The remarks also provided context for the prosecution's case because they demonstrated Elatrache's animosity and anger toward the victim and S. Although the remarks may have sounded inflammatory when the prosecutor made them, the evidence later presented at trial demonstrated that the remarks were not unwarranted characterizations. The state court's conclusion—that the disputed remarks were proper—was objectively reasonable, and relief therefore is not warranted on Elatrache's claim.

V.   Evidence of Other Criminal Activity

Elatrache further alleged that he was denied a fair trial because the trial court allowed the prosecutor to admit extensive evidence of other criminal activity attributed to him. ECF 1, PgID 76. The criminal activity included aggravated stalking, several break-ins, thefts, credit card fraud, and arson. *Id*. at 76, 82. Elatrache asserted that the disputed evidence became the focus of the trial, depicted him as a bad person, and was so pervasive as to deny him a fundamentally fair trial. *Id*. at 77. Elatrache also argued that the evidence was not relevant because it involved dissimilar conduct and a different victim, was unfairly prejudicial due to the nature of the other acts and the detailed testimony and evidence that consumed much of the trial, and was used to show propensity to commit criminal acts and to prove that he acted in conformity with his criminal character. *Id*. at 82–85.

Finally, Elatrache alleged that it was improper to join the stalking count to his homicide case because the stalking did not encompass the same conduct or transaction as the homicide. *Id*. at 80. He claimed that the trial court erred by not allowing him to plead no contest to the stalking charge. *Id*. He contended that he was forced to plead guilty to preserve his right to object to testimony about the stalking. *Id*. at 81–82.

The Michigan Court of Appeals, on the motion to sever, held that "[a]lthough the jury ultimately acquitted defendant of first-degree premeditated murder, defendant's actions prior to the murder—whether aimed at S or aimed at the victim— were relevant to premeditation and deliberation. The trial court did not err in denying

defendant's motion to sever where the complained-of actions were related to the homicide." *Elatrache*, 2016 WL 1578937, at *15. On the issue of the trial court's denial of Elatrache's request to plead no-contest to the stalking charge, the appellate court found that there was "no reason for defendant to argue that he was entitled, as a matter of law, to enter a no contest plea." *Id.* at *16. And as for the "other acts" evidence, the appellate court stated that "[t]he trial court did not abuse its discretion when it permitted the prosecution to present other acts evidence" because it "was offered for a proper purpose and was highly relevant." *Id.* at *18. Further, the evidence "was not offered for the sole purpose of showing that defendant was a bad person;" rather, "it was offered to give context to the crime itself." *Id.*

A.   *Joinder, the Inability to Plead No Contest, and the Admission of Other Acts Evidence*

Elatrache's arguments that the trial court improperly allowed the stalking count to be joined to his homicide case and then refused to allow him to plead no-contest lack merit because those arguments are based solely on state law. ECF 1, PgID 80–82. The Supreme Court held that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and that "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

Furthermore, "a defendant has no right to be offered a plea, nor a federal right that the judge accept it." *Missouri v. Frye,* 566 U.S. 134, 148 (2012) (internal and end citations omitted). The Supreme Court has stated that misjoinder of charges would

rise to the level of a constitutional violation "if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986). But the Sixth Circuit has said that this quote from *Lane* is only dicta, which does not amount to "clearly established federal law" for purposes of 28 U.S.C. § 2254(d)(1). *Mayfield v. Morrow*, 528 F. App'x 538, 541–42 (6th Cir. 2013).

Elatrache's claim about other uncharged acts likewise lacks merit because "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Although "the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, it has not explicitly addressed the issue in constitutional terms." *Id.* at 513 (citations omitted). Thus, "there is no Supreme Court precedent that the trial court's decision could be deemed 'contrary to' under AEDPA." *Id.*

Even if Elatrache's claim were cognizable on habeas review, "states have wide latitude with regard to evidentiary matters under the Due Process Clause," and an evidentiary ruling violates due process and warrants habeas relief only if it "is especially egregious and 'results in a denial of fundamental fairness.'" *Wilson v. Sheldon*, 874 F.3d 470, 475–76 (6th Cir. 2017) (citations omitted); *see also McAdoo v. Elo,* 365 F.3d 487, 494 (6th Cir. 2004) (explaining that a state trial court's evidentiary error can rise to the level of a federal constitutional claim warranting habeas corpus relief if "the error renders the proceeding so fundamentally unfair as to deprive the

petitioner of due process under the Fourteenth Amendment"). Yet the Supreme Court "has repeatedly rejected claims that prejudicial evidence violated due process." *Stewart v. Winn*, No. 18-1204, 2020 WL 4282157, at *3 (6th Cir. July 27, 2020). As such, "state and federal statutes and rules," not the Due Process Clause, "ordinarily govern the admissibility of evidence" in criminal trials. *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012). "The fact that evidence admitted as relevant by a court is shocking to the sensibilities of those in the courtroom cannot, for that reason alone, render its reception a violation of due process." *Lisenba v. California*, 314 U.S. 219, 228–29 (1941).

Here, the trial court permitted the prosecutor to introduce evidence of Elatrache's actions toward S to provide motive. ECF 5-13, PgID 1251–52. The disputed evidence provided a context for the homicide charge. It supported the prosecutor's theory that Elatrache killed the victim to control S so that she would stay in a relationship with him, ECF 5-16, PgID 1500–01, or because the victim was interfering with his relationship with S, ECF 5-2, PgID 239–40. Further, during the trial court's preliminary jury instructions, the trial court informed the jurors that they would be hearing evidence that the defendant committed crimes for which he was not on trial. ECF 5-8, PgID 535–36. And the trial court read a similar instruction to the jury shortly after S began testifying, ECF 5-9, PgID 688–89, and during the court's charge to the jury at the conclusion of the case, ECF 5-16, PgID 1591–92. Even Elatrache's own brother testified that a lot of what happened between Elatrache and S was Elatrache's fault, that Elatrache sent some nasty messages to S, and that

Elatrache occasionally behaved very badly toward S. ECF 5-14, PgID 1339, 1364. The admission of "other acts" evidence was therefore not so fundamentally unfair as to deprive Elatrache of due process. He is not entitled to relief on his fifth claim.

VI.   <u>Trial Counsel</u>

In his sixth and final claim, Elatrache alleged that he was denied his right to effective assistance of counsel when his trial attorney failed to object to inadmissible and inflammatory testimony from Fragel, the jailhouse informant. ECF 1, PgID 86. He further alleged that his trial attorney was ineffective for failing to request a jury instruction on accident. *Id.* The Michigan Court of Appeals disagreed and rejected both claims on the merits. *Elatrache*, 2016 WL 1578937 at *18–19.

A.   *Clearly Established Federal Law*

To prevail on his claim related to his trial counsel, Elatrache must show that (1) his trial "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Unless he makes both showings, it cannot be said that his convictions "resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. A defendant

28

must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### B.   Counsel's Failure to Object to Fragel's Comment

Elatrache argued that his trial counsel should have objected to evidence that he had threatened to kill the two prosecutors and the detective assigned to his case. ECF 1, PgID 86. The prosecutor mentioned the threat in his opening statement, ECF 5-8, PgID 594, and Mark Fragel subsequently testified that Elatrache had threatened to kill the prosecutors and the detective. ECF 5-12, PgID 1162. Elatrache contended that the evidence was inadmissible under state law, irrelevant, highly inflammatory, and uncorroborated. ECF 1, PgID 87–88.

The Michigan Court of Appeals opined that defense counsel very likely "decided not to object to Fragel's testimony as a tactical matter in order to avoid drawing additional attention to it." *Elatrache*, 2016 WL1578937, at *19.  Indeed, "not drawing attention to [a] statement may be perfectly sound from a tactical standpoint."

*United States v. Caver*, 470 F.3d 220, 244 (6th Cir. 2006). It is a sound tactic because the typical remedy for a witness's improper remark at a jury trial is to ask the jury not to consider the remark, and "asking an individual not to think about a particular fact . . . calls attention to the fact that is to be ignored." *Id*. Moreover, "[t]o breach the unreasonableness threshold, 'defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice.'" *Schauer v. McKee*, 401 F. App'x 97, 101 (6th Cir. 2010) (citing *Lundgren v. Mitchell,* 440 F.3d 754, 774–75 (6th Cir. 2006)).

Here, to his credit, defense counsel moved for a mistrial after the prosecutor stated, among other things, that Elatrache planned to kill the prosecutors and a detective. ECF 5-8, PgID 615–16. Defense counsel explained that he did not object sooner because the harm had already been done, an objection would not have done any good, and it would have called attention to the prosecutor's remarks. *See id*. at 616–17. Defense counsel's explanation, plus the fact that the trial court denied his motion for a mistrial, supports the state appellate court's conclusion that defense counsel did not object to Fragel's subsequent testimony for fear of drawing attention to the disputed remark. Defense counsel also may have concluded that an objection to Fragel's remark would have been futile due to the trial court's earlier ruling on counsel's motion for a mistrial. "[T]he failure to make futile objections does not constitute ineffective assistance." *Altman v. Winn*, 644 F. App'x 637, 644 (6th Cir. 2016). Defense counsel's failure to object to Fragel's remark about Elatrache wanting

30

to kill the two prosecutors and a detective therefore did not fall below an objective standard of reasonableness. The Court will deny relief on Elatrache's sixth claim as it relates to defense counsel's failure to object to Fragel's remarks.

### C.    Counsel's Failure to Request a Jury Instruction on Accident

Second, Elatrache claimed that his trial attorney should have requested the following jury instruction on accident:

> 1. The defendant says that he is not guilty of murder because [the victim's] death was accidental. By this Defendant means that he did not mean to kill or did not realize that what he did would probably cause death or cause great bodily harm.

> 2. If the defendant did not mean to kill or did not realize that what he did would probably cause a death or cause great bodily harm, then he is not guilty of murder.

ECF 1, PgID 90. But the medical examiner testified that the victim was hit on the head several times with a blunt object and strangled. ECF 11-4, PgID 3250; ECF 5-12, PageID 1087–88. And there was additional evidence that Elatrache fled the country after the crime—although he informed his brother by phone about two hours after the murder that he was traveling near Toledo, Ohio, ECF 5-14, PgID 1360, he had crossed the bridge from Detroit, Michigan to Windsor, Ontario and later traveled to Waterloo, Ontario, ECF 11-2, PgID 2917–18; ECF 11-3, PgID 3084–86. At his arrest, he had possession of an airline itinerary to Lebanon, ECF 11-3, PgID 3087, and Fragel testified that Elatrache had admitted to him that he beat the victim with his fists, choked him to death, and finished him off with a belt, ECF 5-12, PgID 1159–60, 1239. Although there was a dispute among the medical experts as to whether the

victim died from strangulation or a heart attack, one medical doctor who testified for the defense could not rule out strangulation as a cause of death. *Id*. at 1205.

The evidence did not support a jury instruction on accident, and, as the Michigan Court of Appeals pointed out on appeal, it would have been futile to request a jury instruction on accident, given the trial court's conclusion that the record did not support an instruction on manslaughter. *Elatrache*, 2016 WL1578937, at *19. Defense counsel satisfied *Strickland*'s deferential standard. The state court's rejection of Elatrache's claim therefore was not contrary to, or an unreasonable application of *Strickland*, and relief is not warranted on Elatrache's final claim of ineffective assistance of trial counsel.

## CONCLUSION

Based on the foregoing reasons, the state appellate court's rejection of Elatrache's claims was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. And the state court's decision was not so lacking in justification that there was an error beyond any possibility for fair-minded disagreement. The Court will therefore deny Elatrache's petition for a writ of habeas corpus. And because reasonable jurists would not find the Court's resolution of Elatrache's constitutional claims debatable or wrong, the Court will also deny him a certificate of appealability. *See Slack v.* McDaniel, 529 U.S. 473, 484 (2000).

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Elatrache's habeas corpus petition [1] is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: August 11, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 11, 2020, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager